## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHAUN KONETSCO,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **No. 19-cv-5095** |
| | : | |
| **LANCASTER COUNTY – BUREAU** | : | |
| **OF COLLECTIONS,** | : | |
| **Defendant.** | : | |

## MEMORANDUM

**Joseph F. Leeson, Jr.**                                                **October 7, 2020**
**United States District Judge**

This matter comes before the Court by way of an Amended Complaint submitted by Shaun Konetsco, proceeding *pro se*.  (ECF No. 18.)  For the following reasons, the Amended Complaint will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## I.    FACTUAL ALLEGATIONS[1] AND PROCEDURAL HISTORY

Konetsco initiated this action by submitting a Complaint and a Motion for Leave to Proceed *In Forma Pauperis* (ECF Nos. 1, 2) in the United States District Court for the Middle District of Pennsylvania.  The Middle District subsequently transferred the action to this District, and by Memorandum and Order dated November 25, 2019 (ECF Nos. 9, 10), the Court granted Konetsco's Motion for Leave to Proceed *In Forma Pauperis* and attempted to screen his Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).  After review, the Court determined that "Michael A. Konetsco, a non-attorney, third party, [was] attempting to bring this case on behalf

---

[1]    The facts set forth in this Memorandum are taken from the Amended Complaint.  (*See* ECF No. 18.)

of Shaun Konetsco" and recognized that "a non-attorney [could] not bring claims on behalf of another individual in federal court."  (Memorandum, ECF No. 9 at 4 (citations omitted)). Explaining that "[o]nly Shaun Konetsco, or a licensed attorney, [could] bring claims on his behalf in federal court" in accordance with 28 U.S.C. § 1654, the Court required Shaun Konetsco "to file an Amended Complaint . . . signed by him personally, . . . which sets forth factual allegations related from his own personal knowledge and perspective, not that of a non-attorney, third party" within thirty days.  (*Id.* at 5.)

Unfortunately, as a result of a change in address (ECF No. 12), Konetsco did not receive notice of the Court's November 25, 2019 Memorandum and Order until the Court subsequently directed that these documents be mailed to Konetsco at his new address by Order dated January 22, 2020 and granted Konetsco additional time to file his Amended Complaint.  (*See* Order, ECF No. 13.)  Konetsco then filed a Motion for Extension of Time (ECF No. 14) seeking even more time to file the Amended Complaint.  By Order dated February 21, 2020, the Court then granted Konetsco an additional forty-five days to file his Amended Complaint.  (ECF No. 15).  The Court's February 21, 2020 Order put Konetsco on notice that a failure to comply by filing the Amended Complaint could result in the case being dismissed without further notice for failure to prosecute.  (*Id.* ¶¶ 2, 4.)  By May 13, 2020, it appears that Konetsco had failed to file an Amended Complaint and that his time to do so had expired.  Accordingly, the Court entered an Order on May 13, 2020, dismissing this case with prejudice pursuant to Federal Rule of Civil Procedure 41(b) and directing the Clerk to close the case.  (ECF No. 17 at 2.)

However, nearly two weeks later, on May 26, 2020, the Clerk of Court entered an Amended Complaint on the docket in this matter.  (*See* ECF No. 18.)  The Amended Complaint was sent to the Clerk of Court via Certified Mail, and the Court has verified on the website for

2

the United States Postal Service that Konetsco's Amended Complaint was delivered to the

Courthouse on April 10, 2020 at 11:19 a.m.  It appears that the gap in time between the date the

Amended Complaint was delivered and the date the Amended Complaint was entered on the

docket by the Clerk of Court is related to significant mail processing delays resulting from the

COVID-19 pandemic and various measures implemented by the United States Postal Service and

the Clerk of Court to deal with the outbreak, which has significantly impacted judicial operations

in this District and across the country.  In light of the unprecedented delays in the mail and Court

operations caused by COVID-19, the Court will vacate its May 13, 2020 Order in its entirety,

direct the Clerk of Court to reopen this case, and screen Konetsco's Amended Complaint as

required by 28 U.S.C. § 1915(e)(2)(B).

As set forth in the Amended Complaint, Konetsco appears to bring this action pursuant to

42 U.S.C. § 1983 for alleged violations of his constitutional rights under the Fifth, Eighth, and

Fourteenth Amendments.[2]  Much like the original Complaint, the claims as set forth in the

Amended Complaint are not entirely clear.  However, in the Amended Complaint, Konetsco

essentially claims that he was denied due process when his driver's license was suspended based

on his alleged failure to pay debt obligations he incurred as a result of costs, fees, and fines

imposed against him in two separate criminal matters in Lancaster County.  (*See* Am. Comp.

---

[2]      Kontesco has not alleged a basis for a claim based on criminal statutes. *See Cent. Bank of Dover, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994) ("We have been quite reluctant to infer a private right of action from a criminal prohibition alone[.]."); *see also Carpenter v. Ashby*, 351 F. App'x 684, 688 (3d Cir. 2009) (per curiam) (noting that neither § 241 nor § 241 "creates a civil case of action").  Furthermore, Kontesco has not alleged a race or class-based conspiracy that would give rise to a claim under 42 U.S.C. § 1985 and § 1986. *Farber v. City of Paterson*, 440 F.3d 131, 136 (3d Cir. 2006) (explaining that "§ 1985(3) defendants must have allegedly conspired against a group that has an identifiable existence independent of the fact that its members are victims of the defendants' tortious conduct"); *Clark v. Clabaugh*, 20 F.3d 1290, 1295 n.5 (3d Cir. 1994) (explaining that "to maintain a cause of action under § 1986, the plaintiffs must show the existence of a § 1985 conspiracy").

ECF No. 18 at 2-3); (*see also* Memorandum, ECF No. 9 at 1.)  Konetsco names the following

Defendants: (1) the Lancaster County – Bureau of Collections; (2) Terry Miller Landon, the

Director at the Bureau of Collections; and (3) Andrew Wagner, a Supervisor at the Bureau.  (*Id.*

at 1-2.)

Konetsco alleges that on July 29, 2019, he "made [a] payment to [the Court of Common

Pleas for Lancaster County to] bring [his] account current in order to have [his] license

reinstated[.]"  (*Id.* at 2.)  Konetsco contends that his license was not reinstated, and

approximately twelve days later, on August 10, 2019, he "received a collection Letter from

APEX Asset Management" (hereinafter, "APEX") which claimed that Konetsco now owed his

debt to APEX.  (*Id.*)  According to Konetsco, he later learned that APEX represented that it did

not "buy debt[,]" but instead that APEX "work[s] with the Courthouse[,]" presumably to

collected unpaid debts owed to the Court of Common Pleas for Lancaster County.[3]  (*Id.*)

---

[3]     Konetsco takes the position that APEX is subject to a "Federal Permanent Injunction
from doing any type of business let alone" from having "any type of information, such as Names,
Addresses, Social Security Numbers, [and] Phone Numbers[.]"  (ECF No. 18 at 2.)  Konetsco
claims that this injunction was entered by the Honorable Mark H. Cohen, United States District
Judge for the Northern District of Georgia in a lawsuit brought by the Federal Trade
Commission.  (*Id.*)
        The Court takes judicial notice that Judge Cohen entered a "Default Judgment and Final
Order for Permanent Injunction and Other Monetary Relief" against a number of defendants
including one by the name of "Apex National Services, LLC".  *Federal Trade Commissions v,
Global Processing Solutions, LLC, et al.*, Civ. A. No. 17-4192, ECF No. 82, (N.D. Ga., Sept. 4,
2018).  Judge Cohen's September 4, 2018 Order found that "Apex National Services, LLC" in
conjunction with a number of other corporate defendants engaged in conduct that violated both
the Federal Trade Commission Act, as well as the Fair Debt Collection Practices Act.  (*Id.* at 3-
6.)  Ultimately, Judge Cohen's Order entered a permanent ban on Apex National Services, LLC
from participating in debt collection activities, and a variety of other forms of relief.  (*Id.* at 12-
16.)  However, the Court need not make a determination on the applicability of Judge Cohen's
Order as Konetsco has not named APEX or Apex National Services, LLC as a defendant and has
limited the nature of his Amended Complaint to constitutional claims regarding the suspension
of his driver's license.

Konetsco claims, however, that Defendant Landon represented that the Collections Bureau "sold the debt on August 6th [of 2019] to [APEX] two days after receiving" Konetsco's payment.  (*Id.*)

Konetsco claims that he is being kept "in debtors prison, for not paying court cost[s] and fines[,]" which he asserts is unconstitutional, explaining that he has been "paying the same fine for 14 years" – a fine that started out at $5,000 and has now grown into $20,000.  (*Id.*)  Konetsco asserts that once his payment was received, Defendants "had to reinstate [his] license" because his "account was current" and because Defendants "no longer own[ed] the debt and were paid by APEX[.]"  (*Id.*)  Konetsco claims that he specifically called the Collections Bureau and spoke to Defendant Wagner at some point in September of 2019 about getting his license reinstated in light of: (1) the July 29, 2019 payment Konetsco claims he made; and (2) the fact that Defendants "sold the debt to APEX . . . and were paid in full[.]"  (*Id.*)  Konetsco asserts that because APEX "bought" the debt, Defendants no longer "own the debt" and therefore, "must reinstate [his driver's license] under state and federal statutes."  (*Id.*)  Having made this argument to Defendant Wagner, Konetsco alleges that Wagner claimed Lancaster County was not obligated to follow federal statutes, and then attempted to extort $3,000 from Konetsco in order to reinstate his license.  (*Id.* at 3.)

Despite the somewhat disjointed nature of Konetsco's allegations, the Court understands the Amended Complaint to allege a due process claim challenging the fact that Konetsco's driver's license has twice been suspended "without notification or due process[.]"  (*Id.*)  Konetsco seems to allege that any attempts to notify him of these suspensions were never served upon him because at least two letters were allegedly returned to the Court of Common Pleas in the mail and did not reach Konetsco.  (*Id.*)  Therefore, Konetsco argues, Defendants "could not suspend [his] license."  (*Id.*)  Accordingly, Konetsco seeks to bring procedural due process

claims under the Fifth and Fourteenth Amendments.  (*Id.*)  He also asserts that Defendants violated his Eighth Amendment rights to be free from cruel and unusual punishment, allegedly because the "court was paid and [Konetsco's] license should have been reinstated immediately once they had received payment," but instead, two days later, "they sold the debt to an Illegal collection agency."  (*Id.* at 4.)  Konetsco seeks the following relief: (1) immediate reinstatement of his driver's license; (2) an award of damages in the amount of $1.5 million for these constitutional violations; and (3) an investigation by the Attorney General and the Federal Bureau of Investigation into the named Defendants "illegal practices and tactics[.]"  (*Id.* at 6.)

## II.   LEGAL STANDARD

As noted *supra*, the Court previously granted Konetsco leave to proceed *in forma pauperis* based on his apparent inability to pay the fees to commence this action.  (ECF Nos. 9, 10.)  Accordingly, pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court is obligated to screen the Amended Complaint to determine, among other things, whether it is frivolous or fails to state a claim.  A complaint is subject to dismissal under § 1915(e)(2)(B)(i) as frivolous if it "lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  Conclusory allegations do not suffice.  *Id.*  As Shaun Konetsco is proceeding *pro se*, the Court construes his allegations liberally.  *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

III.    DISCUSSION

In the Amended Complaint, Konetsco seeks to bring claims for violations of his civil rights pursuant to 42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be brought in federal court against state actors.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  However, the Eleventh Amendment bars suits against a state in federal court when the state has not waived that immunity.  *See Will v. Mich. Dep' t of State Police*, 491 U.S. 58, 65-66 (1989).

A.    **Claims Against Lancaster County – Bureau of Collections and Official Capacity Claims Against Defendants Landon and Wagner**

Konetsco's Amended Complaint names the following Defendants: (1) the Lancaster County – Bureau of Collections; (2) Terry Miller Landon, the Director at the Bureau of Collections; and (3) Andrew Wagner, a Supervisor at the Bureau.  (ECF No. 18 at 1-2.)  The Third Circuit has previously held that "Pennsylvania's judicial districts, including their probation and parole departments, are entitled to Eleventh Amendment immunity."  *Haybarger v. Lawrence Cty. Adult Prob. & Parole*, 551 F.3d 193, 198 (3d Cir. 2008) (citing *Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 240-41 (3d Cir. 2005)).  Specifically, the Third Circuit has acknowledged that "all courts and agencies of the [Pennsylvania Unified Judicial System] are part of the Commonwealth government rather than local entities[,]" and that an "individual district and its probation and parole department[,]" as "arm[s] of the State," are entitled to share in the Commonwealth's immunity under the Eleventh Amendment.  *See id.*

The Court takes judicial notice that the Bureau of Collections, as Konetsco refers to it, is more accurately referred to as the Adult Probation & Parole Services' Collections Enforcement

Unit (hereinafter, "the Collections Enforcement Unit" or the "CEU").[4]  *See*

https://www.court.co.lancaster.pa.us/125/Collections-Enforcement-Unit.[5]  A review of the

website for the Lancaster County Court of Common Pleas makes clear that the Collections

Enforcement Unit is "mandated to enforce the collection of court ordered fines, costs, probation

fees, and restitution for all cases under the Lancaster County Court of Common Pleas."  (*Id.*)  It

is also clear from the Court's website that the CEU falls under the auspice of Adult Probation

and Parole Services ("APPS"), that APPS was originally formed by order of the President Judge

of the Lancaster County Court of Common Pleas in 1933, and that APPS remains subject to

orders issued by the President Judge of the Court regarding its operations.  *See*

https://www.court.co.lancaster.pa.us/122/Adult-Probation.  Moreover, the Director of Adult

Probation and Parole Services reports to the District Court Administrator, *see id.*, who is

specifically appointed by the President Judge "in conjunction with the state court administrator,"

https://www.court.co.lancaster.pa.us/134/Court-Administration.  Pursuant to § 901(a) of

Pennsylvania's Judicial Code, Lancaster County is designated as the Second Judicial District,

which is a part of the Unified Judicial System and therefore a state entity of the Commonwealth.

*See* 42 Pa. C.S.A. § 901(a); *see Benn*, 426 F.3d at 241.  Under § 9728(a) of Pennsylvania's

Judicial Code, "all restitution, reparation, fees, costs, fines and penalties shall be collected by the

*county probation department* or other agent designated . . . with the *approval of the president*

---

[4]      It appears that in January of 2010, the Collections Enforcement Unit "assumed the
collection of all monies for both adult and juvenile offenders through the Bureau of Collections."
https://www.court.co.lancaster.pa.us/125/Collections-Enforcement-Unit.
[5]      The Court may take judicial notice of information on a government website that is not
reasonably subject to dispute.  *See Vanderklok v. United States*, 868 F.3d 189, 205 (3d Cir. 2017)
("To the extent that we rely on information beyond what the government included in its amicus
brief, that information is publicly available on government websites and therefore we
take judicial notice of it.").

*judge* of the county for that purpose in any manner provided by law." 42 Pa. C.S.A. § 9728(a)(1) (emphasis added).

The case law in this Circuit, in conjunction with the Pennsylvania Judicial Code, dictates that the Collections Enforcement Unit – a unit within Adult Probation and Parole Services for the Lancaster County Court of Common Pleas – is an arm of the state and is therefore immune from suit under the Eleventh Amendment. *See Haybarger*, 551 F.3d at 201; *Perez*, 507 F. App'x at 190; *see also Benn*, 426 F.3d at 240-41. Accordingly, Konetsco's claims against the Collections Enforcement Unit, misidentified in the Amended Complaint as the "Lancaster County – Bureau of Collections", are dismissed with prejudice.[6] *See Perez v. Borough of Berwick*, 507 F. App'x 186, 190 (3d Cir. 2012) (upholding the district court's finding that the Columbia County Probation and Parole Department was "'not part of Columbia County,' but rather 'an agency of the Commonwealth'" of Pennsylvania and recognizing the fact "that Pennsylvania probation and

---

[6] *Mickell v. Lycoming County Central Collection Office and Administration*, a recent non-precedential decision from the Third Circuit, is not to the contrary. App. No. 20-2020, 2020 WL 5544288 (3d Cir. Sept. 16, 2020) (per curiam). In that case, the district court dismissed as legally frivolous the *pro se* plaintiff's constitutional claims against the Lycoming County Central Collections Office and Administration related to attempts to collect court fines in light of the defendant's entitlement to Eleventh Amendment immunity as an arm of the state. On appeal, the Third Circuit summarily affirmed the District Court's ruling but paused to note that it "need not decide if [the Lycoming County Central Collections Office and Administration] is an 'arm of the state'" and affirmed the dismissal of Mickell's claims as legally frivolous on different grounds. *Id.* at *1-2. In explaining the application of § 9728(a) of the Pennsylvania Judicial Code, the Third Circuit suggested, however, that "the Commonwealth of Pennsylvania authorizes counties, not courts, to operate collection enforcement units." *Id.* at *1.

At the outset, the Court notes that the Third Circuit's opinion in *Mickell*, 2020 WL 5544288 does not constitute binding precedent on this Court. *Id.* at *1, n.*. Moreover, in *Mickell*, the Third Circuit expressly left open the question of whether the Lycoming County Central Collections Office and Administration was an arm of the state entitled to Eleventh Amendment immunity. In any event, it is clear that with respect to the Collection Enforcement Unit sued in this particular case, the CEU falls under the auspices and control of APPS of the Lancaster County Court of Common Pleas and is properly considered an arm of the state for purposes of the Eleventh Amendment Immunity analysis pursuant to *Haybarger*, 551 F.3d at 201, which is binding on this Court.

parole departments are legally part of the Commonwealth's Unified Judicial District" remained true even where a probation officer testified that she "'work[ed] for Columbia County as a probation/parole officer,'" and where the second amended complaint named Columbia County as a defendant and inaccurately alleged that the County "operated the … Probation Department"); *cf. Scheib v. Pennsylvania*, 612 F. App'x 56, 59 (3d Cir. 2015) ("It appears that [plaintiff] named the County as a defendant because she mistakenly believes that the Allegheny County Court of Common Pleas is a County entity.  As the District Court correctly noted, however, the court is a Commonwealth—not County—entity. . . .  Therefore, [plaintiff's] claims against the Court of Common Pleas are . . . barred by the Eleventh Amendment.").

With respect to Defendants Landon and Wagner, suits against state officials acting in their official capacities are really suits against the employing government agency, and as such, are also barred by the Eleventh Amendment.  *A.W. v. Jersey City Public Schools*, 341 F.3d 234, 238 (3d Cir. 2003); *see Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep' t of State Police*, 491 U.S. 58, 70-71 (1989).   As the Commonwealth has not waived its Eleventh Amendment immunity for lawsuits filed in federal court, *see* 42 Pa. Cons. Stat. § 8521-22, its officials sued in their official capacities are immune from suits filed in federal court. Accordingly, the Court will dismiss Konetsco's claims against Defendants Landon and Wagner in their official capacities with prejudice.

**B.     Individual Capacity Claims Against Defendants Landon and Wagner**

Liberally construing Konetsco's Amended Complaint it appears he may also be attempting to bring claims against Defendants Landon and Wagner in their individual capacities. Even assuming Konetsco seeks to assert individual capacity claims here, the Amended Complaint fails to state a claim against either Defendant for suspending Konetsco's driver's

license without due process.  The Court understands Konetsco's Amended Complaint to bring claims based on a legal theory he has pieced together as follows:

a) the Collections Enforcement Unit "sold" Konetsco's debt to APEX on August 6, 2019, two days after Konetsco made a payment that he alleges was made "to bring [his] account current in order to have [his] license reinstated[,]" (ECF No. 18 at 2); and

b) by virtue of the sale of his debt to APEX, Konetsco's asserts that the CEU was "paid in full so [the CEU] do[es] not own the debt anymore", (*id.*); therefore,

c) the payment APEX made when it purchased the debt from the CEU should have resulted in the reinstatement of his license, (*see id.*); (*see also id.* at 3) ("[T]he courthouse sold the debt and were paid by APEX"); (*see also id.* at 4) ("The selling of my debt means that [Defendants] no longer have any control over my license, and as of the day they sold the debt . . . they should have reinstated me license as they have no jurisdiction over me or my license now or evermore").

Accordingly, by suspending his license and failing to reinstate it after the sale of the debt to APEX, Defendants allegedly violated Konetsco's constitutional rights.

Unfortunately, Konetsco's legal theory misunderstands the nature of debt collection.  As the Federal Trade Commission has explained, "[c]reditors often sell debt that they have not collected to 'debt buyers.'  When debts are sold, the buyers receive information about the debtor and the debt from the sellers.  Debt buyers also may resell the debt to other debt buyers. Many debts are purchased and resold several times over the course of years before . . . the debtor pays the debt[.]"  Federal Trade Commission, The Structure and Practices of the Debt Buying Industry 1 (2013), at https://www.ftc.gov/sites/default/files/documents/reports/structure-and-practices-debt-buying-industry/debtbuyingreport.pdf (last visited Oct. 5, 2020) (cited with approval in

*Tepper v. Amos Fin., LLC*, 898 F.3d 364, 366 (3d Cir. 2018)).  Konetsco fails to appreciate that regardless of any purported "sale" of his debt by the CEU to APEX, his debt remained outstanding.  He was not absolved of his responsibility to pay that debt in full himself, and to the extent his license was suspended as a result of his failure to pay, he has not stated a plausible claim for a constitutional violation arising from these facts with respect to Defendants Landon and Wagner.

Finally, Konetsco's individual capacity claims against Defendants Landon and Wagner fail for an additional reason.  "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  Konetsco's Amended Complaint does not set forth details demonstrating that either Defendant Landon or Defendant Wagner had any personal involvement in the alleged sale of his debt or the process that actually resulted in the suspension of his license.  The Amended Complaint only describes the content of various telephone conversations Konetsco or his representative had with these Defendants and the comments these individuals made over the phone *after* his license had previously been suspended where Konetsco argued that his debts were paid.  (*See* ECF No. 18 at 2-3.)  These facts are insufficient to state a plausible claim for the denial of due process in the suspension of Konetsco's license.  Having previously granted Konetsco an opportunity to amend his pleading, it appears any further amendment would be futile and the Court will therefore dismiss any individual capacity claims with prejudice as well.

IV.     **CONCLUSION**

For the foregoing reasons, the Court will dismiss Konetsco's Amended Complaint with prejudice.  Because any further attempt at amendment would be futile, Konetsco will not be

granted leave to amend. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 112-113 (3d Cir.

2002).

   An appropriate Order follows.


                              **BY THE COURT:**


                              */s/ Joseph F. Leeson, Jr.*
                              _____
                              **JOSEPH F. LEESON, JR.**
                              **United States District Judge**

13